In re B & B MINING, INC., Debtor.

B & B MINING, INC., Plaintiff,

v.

LAUREL MOUNTAIN MINING COMPANY, INC., et al., Defendants.

In re A & O CORPORATION OF VIRGINIA, Debtor.

A & O CORPORATION OF VIRGINIA, Plaintiff,

v.

LAUREL MOUNTAIN MINING COMPANY, INC., et al., Defendants.

Bankruptcy Nos. 7–80–00188, 7–80–0019, 7–80–00187 and 7–80–0020.

United States Bankruptcy Court, W. D. Virginia, Roanoke Division.

Feb. 27, 1980.

Nunley & White, Eugene E. Lohman, Bristol, Va., for debtors-plaintiffs.

Joseph P. Johnson, Jr., Abingdon, Va., for defendants.

H. CLYDE PEARSON, Bankruptcy Judge.

■ The "closing date" of a stock purchase agreement never having arisen, the prospective buyer may not now claim ownership and control of the Debtor Corporations. The Bankruptcy Court thus has jurisdiction to receive a Chapter 11 proceeding filed by Debtor Corporations with all attendant rights, powers, and duties vesting in the debtors in possession under 11 U.S.C. § 1101 *et seq.*

The above being companion cases with the facts common to each, the Court issues herewith this Joint Opinion.

Plaintiff, A & O Corporation of Virginia (A & O) and B & B Mining, Inc. (B & B) filed complaints herein seeking relief generally as follows: an injunction against the Defendants from interfering with mining operations of A & O and B & B, trading as

Laurel Mountain Mining Company, Inc. and Laurel Mountain Mining Company, Inc. No. 2 (hereinafter Laurel Mountain); turn over the property, and make an accounting.

Upon trial of the complaints, the facts appear as follows:

B & B and A & O are Virginia Corporations, the issued stock of which consists of two certificates in each corporation issued to and presently in possession of one Joda Blankenship and one Gentry Blackwell each representing 50% ownership in each corporation; that on June 19, 1979, a letter of intent was exchanged between one Robert D. Esseks (Esseks), sole owner of Laurel Mountain and Blackwell and Blankenship, who were sole owners as herein noted, proposing to purchase by Laurel Mountain, all outstanding stock of A & O and B & B; that thereafter, a Stock Purchase Agreement was prepared and entered into between Blankenship and Blackwell, as Sellers and Laurel Mountain Mining Company, Inc., a West Virginia Corporation, and Robert D. Esseks, designated as Buyers, which was dated July 31, 1979, although not acknowledged by Blankenship and Blackwell until October 26, 1979, individually and as President of B & B and A & O respectively, and by Esseks individually and as President of Laurel Mountain on October 30, 1979; that on August 22, 1979, Esseks, designated as President, filed in the Clerk's Office of the City of Bristol wherein the registered agent of A & O and B & B resides, a certificate of doing business under an assumed name pursuant to Virginia Code Section 59.1–69, the assumed name being Laurel Mountain Mining Company in the case of B & B and Laurel Mountain Mining Company No. 2 in the case of A & O; that on July 24th, Laurel Mountain entered into mining contracts No. 406–I and 406–B, with Clinchfield Coal Company, a Division of the Pittston Company, to perform deep coal mining operations in Dickenson County using the property and equipment of B & B and A & O and thereupon commenced mining operations which continued until about February 20, 1980, when Chapter 11 proceedings were filed in this Court by B & B and A & O at the instance of Blankenship and Blackwell seeking relief thereunder and thereafter the Complaints herein were filed.

This Court without objection, conducted an expedited hearing upon the Complaints. The Defendants appeared and made oral motions to dismiss for the reason that the Complaints of A & O and B & B were not properly before the Court since the control of B & B and A & O under the Stock Purchase Agreement vested in Laurel Mountain and Esseks, and apparently Blackwell and Blankenship were without authority to file the Chapter 11 proceedings in behalf of A & O and B & B and these complaints.

Counsel for the Debtors, Plaintiffs herein, A & O and B & B and in behalf of Blackwell and Blankenship contend that the control of the Debtor Corporations remains with Blackwell and Blankenship; that the Stock Purchase Agreement was executory and never consummated or finalized; that the stock was never delivered and that Esseks and Laurel Mountain were depleting the assets, running up large debts and generally doing irreparable harm to the mining operation and property of the Debtor Corporations.

It appears to the Court that the crucial issue for decision is the determination of ownership and control of the Debtor Corporations A & O and B & B. If the ownership and control rests in Blackwell and Blankenship, the Debtor proceedings were properly filed, thereupon vesting in this Court jurisdiction over the Debtor Corporations with all powers, rights and duties given a debtor in possession status under Chapter 11 (11 U.S.C. § 1101, *et seq.*).

If on the other hand ownership and control of the Debtor Corporations vests in Esseks and Laurel Mountain by virtue of the Stock Purchase Agreement, then these Debtor proceedings were improperly filed, should be dismissed and the parties relegated to such forum wherein their remedies may repose.

A decision on these issues requires the facts and circumstances surrounding the "Stock Purchase Agreement" (Agreement) be reviewed and determined.

The Agreement was introduced into evidence as Plaintiff's Exhibit 16 and consists of numerous pages. Although dated July 31, 1979, the Agreement was not executed and acknowledged until October 26th and 30th. It provides that Blankenship and Blackwell would sell their 50% stock interest in A & O and B & B to Laurel Mountain, designated as "Buyer". The terms of the sale price was $700,000.00 plus a provision for distribution of net profits from the operation, 50% to the Sellers and 50% to Buyer. The payment terms were $70,000.00 in ten consecutive monthly installments commencing October 15, 1979 and ending July 15, 1980, with ½ each to Blankenship and Blackwell. Payments were two months in arrears according to Plaintiff's evidence on February 20, 1980, although this was disputed in the testimony of Mr. Esseks. The evidence further showed as appeared from correspondence between Counsel for Blankenship and Blackwell and Counsel for Esseks dated November 20, 1979, that certain exhibits were to be completed, and that clarifying modifications relating to the purchase price should be drafted. This was reflected in the letter of November 20th from William M. Woodroe, Esseks' Attorney in Charleston, West Virginia, to Eugene E. Lohman, Attorney for Blankenship and Blackwell introduced as Plaintiff's Exhibit 20.

The Agreement further provided for the computation of "net profits" and the payments thereof, as well as restriction on salaries of officers and directors which salaries could not be paid without the unanimous consent of the Buyer and Sellers. The evidence showed that Esseks had withdrawn during the period approximately Ninety Thousand Dollars ($90,000.00) in cash or beneficial payments without the consent of the Sellers which was an alleged violation of the intent and terms of the Agreement.

The Agreement contained prohibition against replacement or repair expenses or the acquisition of mining equipment in excess of $25,000.00. The evidence showed that Laurel Mountain or Esseks had purchased a scoop for a sum substantially more than $25,000.00. This was likewise an alleged violation of the terms of the Agreement.

Section 1.4 of the Agreement further provided for "closing" which was to take place at 2:00 p. m. November 16, 1979, or such other date as the Sellers' and Buyer should agree at the offices of the Sellers' Counsel in Bristol. It was at this "closing" that consummation and finalization was to take place.

Section 1.5 of the Agreement provided for a transfer of stock in the following language:

"At the Closing, the Sellers will transfer and deliver to Buyer all of the shares of B & B Stock and of A & O Stock (all of which shares of the Companies Stock shall be transferred by delivery of certificates therefore duly endorsed, or accompanied by duly executed stock powers, with requisite documentary stamps affixed and any other applicable tax on the sale or transfer of the Stock of the Companies paid for, or provided for, by the Sellers and not by the Companies and with signatures guaranteed) together with all consents of third persons necessary to transfer to Buyer all of the Stock of the Companies purchased by Buyer as set forth in Section 1.1."

Following the above, other provisions of the Agreement, provided for resignation of the officers and directors at the closing and the election of directors and officers thereafter with the issuance of new shares of stock to the Buyer which were to be endorsed by the Buyer and delivered and pledged to the Sellers to secure the unpaid purchase price pursuant to the Uniform Commercial Code of Virginia. The Agreement contained extensive provisions as to mining practices, warranties including warranties as to the transfer of the stock on the "closing date". Throughout the Agreement reference is made to the "closing date" as the date for transfer not only of the stock but the assets. Article VII sets out detailed provisions relating to closing. In this Article the obligations of the Buyer and Sellers are set forth in great detail with certifica-

tion to be made by the parties as to the various warranties and representations concerning the Agreement.

It further appears from the evidence that the closing as contemplated under the terms of the Agreement never occurred as contemplated by the parties and provided in the Agreement terms, despite the fact that Esseks, through Laurel Mountain commenced mining operations under the contract with Clinchfield the last of July or first part of August, 1979, and operated until the Chapter 11 cases were filed herein. Additionally, the stock certificates were never issued as provided in the Agreement. These stock certificates were admitted into evidence as Plaintiff's Exhibits 4, 5, 6 and 7, from which it appears that Blackwell and Blankenship are the record owners of A & O and B & B and other certificates were never issued as provided in the Agreement.

The evidence further was that Blankenship and Blackwell, in the first part of August wrote letters to the Commonwealth of Virginia, Division of Mine Reclamation and Clinchfield Coal Corporation advising that the Company would be thereafter operated by Laurel Mountain and Esseks and giving due notice thereof, and that Blankenship and Blackwell would have no further participation in the operation.

In addition to the evidence concerning the violations of the terms of the Agreement, Plaintiff introduced evidence that the liabilities of the Company had increased from approximately One Million Dollars ($1,000,000.00) on the first of August to approximately Two Million Dollars ($2,000,000.00) at present and that the mine was not being operated in workmanlike manner. Additionally, Plaintiffs further introduced evidence of the proposed cancellation of insurance, the lack of coverage of which would greatly impair the operation.

Esseks testified that so far as he was concerned, the Agreement was finalized and the only remaining act was the stock issuance. This testimony is inconsistent with correspondence from Esseks' Counsel as late as November 20th (four days after the stipulated closing date) that modifica-

tions of the Agreement were in order and should be drafted. These modifications apparently were to be accomplished before the Agreement could be finalized and "closed" as contemplated by the terms of the Agreement. The evidence does not show any subsequent action which would have complied with the "closing" terms of the Agreement.

The Decision in this case must rest upon the construction which the Court gives to the status of the Stock Purchase Agreement. A thorough review of these provisions adds appropriate emphasis to its provisions relating to "closing". The construction upon this aspect of the Agreement determines its finality.

The "closing" provision directly related to the transfer of the stock. It is apparent from the facts that this incident as contemplated never took place and the "closing date" never arose. Hence, a transfer of the stock of necessity never occurred and when the Chapter 11 proceedings were filed, the capital stock of A & O and B & B remained as registered to Blackwell and Blankenship and as such were the owners of record upon the stock record books of the two Corporations.

The Court necessarily finds and concludes that the Stock Purchase Agreement remained executory and that the stock ownership remained with Blackwell and Blankenship. This conclusion is fully supported by the law in this jurisdiction.

■ The voting rights of stockholders are to be determined by the law of the State of Incorporation. *See* Restatement, Conflict of Laws § 183. See also 19 *Am.Jur.*2d § 632.

■ The Plaintiff herein is aided by the presumption that the holder, and in this case, the record owner, has *prima facie* title with all attendant rights and powers of such ownership. This Court cannot find in the evidence sufficient evidence to rebut this presumption. See 18 *Am.Jur.*2d § 398.

Since the statutory law of the State of Incorporation of A & O and B & B is

Virginia, § 13.1–29 *Code of Virginia*, 1950, governs such ownership. This section provides that the record owner of corporate stock as reflected by the books and records of the Corporation has the right and power vested in such ownership to vote and otherwise deal therewith. In 4B *Michie's Jurisprudence, Virginia and West Virginia*, Section 146 Corporations Subtitle "who may vote stock" the author citing the foregoing Code section states:

"The owner of stock as shown on the books of the corporation is the person entitled to vote the stock."

The rights and incidents of ownership to corporate stock are set forth by the Supreme Court of Virginia in *Fein v. Lanston Monotype Machine Co., et al.* (1955) 196 Va. 753, 85 S.E.2d 353 at page 360 where the Court states:

"Shares of stock in a corporation constitute proprietary rights. They represent the proportion to which the respective shareholders are severally entitled in the distribution of the profits arising from the corporate business, and in the final distribution of the estate of the corporation, if it should cease to exist. All stockholders of the same class stand on equal footing, both as to rights and liabilities, and those rights cannot be changed except in the manner provided by law. The right of voting stock at corporate meetings is an incident of ownership; it is a part of the stockholders' property inherent in him by virtue of his title. *Carnegie Trust Co. v. Security Life Ins. Co.*, 111 Va. 1, 27, 68 S.E. 412, 31 L.R.A.,N.S., 1186, 21 Ann.Cas. 1287; 13 Am.Jur., Corporations, § 412, page 465; 18 C.J.S., Corporations, § 482, page 1156."

It is apparent from a review of the entire facts of this case that it is not the normal routine stock purchase transaction where the agreement is struck, reduced to writing, executed with all necessary transfers being made of documents and property. In this case, the parties verbally agreed by virtue of the "letter of intent" of July 19, 1979, to buy and sell. Not until October 30th, when Esseks signed and acknowledged the Agreement before a notary public was the same finally reduced to writing. Thereafter, according to the letter from Esseks' Counsel of November 20, 1979, these parties were referring to the Agreement as a "proposed agreement" and requesting the exchange of exhibits and amendments to the "proposed agreement". Esseks' Attorney further stipulates "I must advise you that there has been no corporate action taken approving these contracts as yet. As soon as I received the exhibits mentioned, I will go over them, discuss the matter with Mr. Esseks and get in touch with you."

The foregoing letter was dated November 20th while under the terms of the Agreement the closing was to be completed at 2:00 p. m. November 16th. Not only does it appear to the Court that the parties continued to negotiate but no evidence appears in this record that the closing as contemplated ever occurred. In fact, the evidence clearly shows there was never a "closing" or a finalization of the Agreement.

Accordingly, the Court having concluded that the Agreement was executory and that title and ownership of the corporate stock repose in Blackwell and Blankenship an Order will appropriately be entered directing that these Chapter 11 cases proceed as provided by The Bankruptcy Reform Act of 1978, and the Motion to Dismiss denied.